**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ROBERTO FUENTES, | : | |
| | : | Civil Action No. 05-3446 (FLW) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| STATE OF NEW JERSEY OFFICE OF | : | |
| THE PUBLIC DEFENDERS, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

ROBERTO FUENTES, Plaintiff pro se
# 102281
Atlantic County Justice Facility
5060 Atlantic Avenue
Mays Landing, New Jersey 08330

**WOLFSON**, District Judge

Plaintiff Roberto Fuentes ("Fuentes"), currently confined at the Atlantic County Justice Facility in Mays Landing, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it

should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should proceed in part.

I.  <u>BACKGROUND</u>

Fuentes brings his civil rights action against the following defendants: State of New Jersey Public Defender's Office; Officer Almieda at the Atlantic County Justice Facility ("ACJF"); the Atlantic County Prosecutor's Office; and the Atlantic County Department of Public Safety.

Fuentes claims to be a pretrial detainee pending ongoing state criminal proceedings.  He alleges that his conditions of confinement at the ACJF violate his constitutional rights. First, Fuentes states that he is forced to sleep on "an unpatented piece of plastic inches from an extremely filthy and dusty floor.  He also claims that the jail facility is overcrowded, bunking three men to a cell built for one person. There is also not enough seating for meals so most inmates must eat on their bunks, inches from the floor and toilet.  Sometimes, inmates are required to eat while seated on the toilet.  Meals do not meet the nutritional standards prescribed by New Jersey regulations.  The meals also are served cold and the food handlers do not follow the mandated standards of cleanliness.

The food is served on trays with straps that smell like garbage and are unsanitary.  Fuentes also claims that a staph infection epidemic started at ACJF.[1]  In addition, new inmates are routinely placed in the general population before tuberculosis testing.  Fuentes contends that the overcrowded conditions lead to inmate violence, suicide, and attempted suicide.  The jail is unsanitary and is covered with dust on windows, ventilation ducts, and the sprinkler system, leading to the spread of infections and disease.  He further complains that he is subjected to extremely high noise level for a lengthy period of time.

Fuentes next complains about the 10% V.C.C.B.[2] tax on purchases at the commissary by the inmates.  The inmates are also charged a $50.00 user fee, and a $2.30 fee for an indigent kit.[3]  Fuentes alleges that inmates are not given prescribed medications but instead are given less effective and less costly medications and treatment.  Inmate mail is routinely withheld on Saturdays.  Further, there is a consistent failure to comply with fire, building, and health codes, as well as the New Jersey

---

[1]  The staph infection "epidemic" allegedly occurred in 2002 and 2003.

[2]  V.C.C.B. refers to the Victims of Crime Compensation Board.

[3]  The indigent kit contains 3 pieces of lined paper, a small tube of toothpaste, a three-inch pencil, and 3 stamped envelopes.

Administrative Codes applicable to jail facilities and pretrial detainees.

Fuentes also alleges that he has received deficient representation by the assigned public defender during the years 2002 and 2003, and continuing.  His assigned counsel has failed to retain his file, investigate his case, and effectively defend plaintiff in his state criminal proceedings.  He claims that his counsel prefers to negotiate a plea bargain despite plaintiff's assertion of innocence.  Fuentes contends that the plea offers take place in holding cell areas, rather than an open courtroom, and that the plea offers are made with threats of harsher sentences if not taken.  He further alleges that his counsel has advised against his request for a bail reduction hearing.  Suppression hearings and probable cause hearings also are rare.  He has no telephone contact with his assigned counsel, and no copies of discovery material pertaining to his criminal matter.  Plaintiff purportedly remains untried for the crimes charged against him in 2002.  Fuentes alleges that speedy trials are non-existent for indigent clients.

Fuentes also asserts that the law library at ACJF is inadequate, with out-dated materials, books missing and pages missing, and minimum access time afforded inmates.  Finally, Fuentes alleges that, on April 22, 2005, defendant, Officer Almieda, pointed at plaintiff while he was on the 2nd tier at

ACJF, and said, "Michael Jackson ain't got nothing on you."
Fuentes claims that this remark was a violation of his
constitutional rights.  He does not allege that he has received
any threats from other inmates or has been physically harmed in
any way as a result of Officer Almieda's comment.

Fuentes seeks a timely resolution of his state criminal
proceeding, injunctive relief to remedy the overcrowded and
unsanitary living conditions at ACJF, and a total of $3.5 million
in compensatory and punitive damages.

II.  <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-
134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996),
requires a district court to review a complaint in a civil action
in which a prisoner is proceeding <u>in forma pauperis</u> or seeks
redress against a governmental employee or entity.  The Court is
required to identify cognizable claims and to <u>sua sponte</u> dismiss
any claim that is frivolous, malicious, fails to state a claim
upon which relief may be granted, or seeks monetary relief from a
defendant who is immune from such relief.  28 U.S.C. §§
1915(e)(2)(B) and 1915A.[4]

_____

[4]  Plaintiff should also be aware that the PLRA requires
Courts to determine whether a prisoner has, on three or more
prior occasions while incarcerated or detained in any facility,
brought an action or appeal in federal court that was dismissed
as frivolous, malicious, or for failure to state a claim upon
which relief may be granted.  If so, the prisoner is precluded
from bringing an action <u>in forma pauperis</u> unless he or she is

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d

---

under imminent danger of serious physical injury. 28 U.S.C. §
1915(g). It does not appear that Fuentes has filed any lawsuits
which were dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and
1915A.

6

371, 373 (3d Cir. 1981).  However, where a complaint can be
remedied by an amendment, a district court may not dismiss the
complaint with prejudice, but must permit the amendment.  Denton
v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d
229 (3d Cir. 2004)(complaint that satisfied notice pleading
requirement that it contain short, plain statement of the claim
but lacked sufficient detail to function as a guide to discovery
was not required to be dismissed for failure to state a claim;
district court should permit a curative amendment before
dismissing a complaint, unless an amendment would be futile or
inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103,
108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C.
§ 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir.
2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v.
Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 ACTIONS

Fuentes brings this action pursuant to 42 U.S.C. § 1983
alleging violations of his civil rights guaranteed under the
United States Constitution.  Section 1983 provides in relevant
part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party

7

>injured in an action at law, suit in equity, or other
>proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.   ANALYSIS

A.   Due Process Conditions-of-Confinement Claim

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or State law.  See Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).  Pretrial detainees retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment.  See Fuentes v. Wagner, 206 F.3d 335, 341 n.9 (3d Cir.), cert. denied, 531 U.S. 821 (2000).  Analysis of whether such a detainee has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979).  Fuentes, 206 F.3d at 341-42.

>In evaluating the constitutionality of conditions
>or restrictions of pretrial detention that implicate
>only the protection against deprivation of liberty
>without due process of law, we think that the proper
>inquiry is whether those conditions amount to

punishment of the detainee.  For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...

Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however.  Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...

A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.  Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."  Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.  ...

441 U.S. at 535-39 (citations omitted).  The Court further

explained that the government has legitimate interests that stem

from its need to maintain security and order at the detention

facility.  "Restraints that are reasonably related to the

institution's interest in maintaining jail security do not,

without more, constitute unconstitutional punishment, even if

they are discomforting and are restrictions that the detainee

would not have experienced had he been released while awaiting

trial." 441 U.S. at 540.  Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives;  441 U.S. at 539 n.20; or are grossly exaggerated responses to genuine security considerations.  Id. at 539 n.20, 561-62.

In Bell, the Supreme Court held that double-bunking under the circumstances presented in that case did not constitute punishment, and therefore, did not violate the pretrial detainees' due process rights.  Id., at 541-43.  The Court further noted that no due process violation occurred where pretrial detainees were detained for generally less than 60 days. However, the Court cautioned that: "confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privation and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment."  Id. at 542.

Such circumstances of serious overcrowding in a county jail were presented in Union County Jail Inmates v. DiBuono, 713 F.2d 984 (3d Cir. 1983).  There, the Third Circuit established a two-part test in line with Bell:

> "we must ask, first, whether any legitimate purposes are
> served by these conditions, and second, whether these
> conditions are rationally related to these purposes.  In
> assessing whether the conditions are reasonably related to
> the assigned purposes, we must further inquire as to whether
> these conditions "cause [inmates] to endure [such] genuine
> privations and hardship over an extended period of time,

10

that the adverse conditions become excessive in relation to the purpose assigned to them."

713 F.2d at 992.

Here, Fuentes alleges that he has been forced to sleep on a plastic mattress inches from a cold and filthy concrete floor, near a toilet, for a substantial period of time due to overcrowding.[5]  Three months would seem to be an extended period of time for endurance of these stated deprivations and hardship. Moreover, these alleged conditions of overcrowding, in combination with Fuentes' other claims of substandard conditions relating to denial of medical and health care, inadequate diets and unsanitary service of food, unsanitary conditions leading to the spread of infections and disease, extremely high noise levels at night preventing sleep, poor ventilation, and building and fire code violations, suggest extreme deprivations inflicted on plaintiff for the purpose of punishment without reason.  Thus, if these allegations are true, the adverse conditions as alleged may be excessive in relation to their stated purpose, and a court may infer that it is intended as punishment.  See Newkirk v. Sheers, 834 F. Supp. 772, 781 (E.D.Pa. 1993).  Therefore, the Court is

---

[5]  In a submission to the Court on August 29, 2005, (Docket Entry No. 6), plaintiff appears to say that he is now on the lower bunk in his cell, but a third inmate is now sleeping on a mattress on the floor inches from the toilet.

inclined to allow this claim to proceed at this early stage, as against the Atlantic County Department of Public Safety.[6]

B.   Interference with Inmate Mail

Next, Fuentes alleges that inmate mail at ACJF is withheld on Saturdays.  He does not allege that his mail has been specifically withheld.  Instead, the ACJF has elected not to send inmate mail or have it delivered to inmates on Saturdays. Inmates have a limited liberty interest in their mail under the

---

[6]  The Court does not make any determination at this initial stage of the proceedings as to whether the Atlantic County Department of Public Safety is the local government entity with authority over the conditions at the ACJF.  Nevertheless, it would appear that the conditions of confinement claims against this defendant rests solely on supervisor liability, which is not cognizable in § 1983 actions.  Local government units and supervisors typically are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).
    Here, it would appear that the defendant, Atlantic County Department of Public Safety, is liable only under a theory of respondeat superior.  Therefore, this conditions claim may be subject to dismissal without prejudice for failure to state a claim.  However, the Court will allow plaintiff the opportunity to amend his pleading to allege personal involvement, personal direction, or actual knowledge and acquiescence of this defendant, or to name specific officials with personal involvement with respect to this claim, subject to Fed.R.Civ.P. 15.  See Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004).

First and Fourteenth Amendments; thus, an inmate's constitutional right to send and receive mail may be restricted only for legitimate penological interests.  See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Turner v. Safley, 482 U.S. 78, 89 (1987). A single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation.  Morgan v. Montayne, 516 F.2d 1367 (2d Cir. 1975), cert. denied, 424 U.S. 973 (1976).

Here, Fuentes does not allege sufficient facts that may demonstrate a pattern of actual and deliberate interference with his legal mail.  Therefore, the Court will dismiss this claim without prejudice, for failure to state a claim on the facts as alleged.

C.   Inadequate Law Library Claim

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances.  Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983).  In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights.  Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  See also

13

Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988)
(chronicling various constitutional sources of the right of
access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme
Court held that "the fundamental constitutional right of access
to the courts requires prison authorities to assist inmates in
the preparation and filing of meaningful legal papers by
providing prisoners with adequate law libraries or adequate
assistance from persons trained in the law."  The right of access
to the courts is not, however, unlimited.  "The tools [that
Bounds] requires to be provided are those that the inmates need
in order to attack their sentences, directly or collaterally, and
in order to challenge the conditions of their confinement.
Impairment of any other litigating capacity is simply one of the
incidental (and perfectly constitutional) consequences of
conviction and incarceration."  Lewis v. Casey, 518 U.S. 343, 355
(1996) (emphasis in original).  Similarly, a pretrial detainee
has a right of access to the courts with respect to legal
assistance and participation in one's own defense against pending
criminal charges.  See, e.g., May v. Sheahan, 226 F.3d 876, 883-
84 (7th Cir. 2000); Caldwell v. Hall, 2000 WL 343229 (E.D. Pa.
March 31, 2000).  But see United States v. Byrd, 208 F.3d 592,
593 (7th Cir. 2000) (pretrial detainee who rejects an offer of
court-appointed counsel in satisfaction of the Sixth Amendment

14

right to counsel has no alternative right to access to a law library); Wilson v. Blankenship, 163 F.3d 1284, 1290-91 (11th Cir. 1998) (same); United States v. Walker, 129 F.3d 1266, 1997 WL 720385, **4 (6th Cir. 1997) (same).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  See Lewis, 518 U.S. at 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351.

In describing the scope of services which must be provided by the state to indigent prisoners, the Supreme Court has stated, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them.  ... This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide

meaningful access. But the cost of protecting a constitutional right cannot justify its total denial." Bounds, 430 U.S. at 824-25, clarified on other grounds, Lewis v. Casey, 518 U.S. 343. Thus, "there is no First Amendment right to subsidized mail or photocopying. [Instead], the inmates must point to evidence of actual or imminent interference with access to the courts." Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

Here, Fuentes fails to allege any actual injury as a result of the alleged limitations on his use of the law library. Moreover, it is clear that Fuentes has had counsel representing him in his criminal matters, although it is apparent he is not satisfied with his counsel's performance. Finally, Fuentes has been able to file this Complaint without any allegations that his efforts to do so were encumbered in any way. Therefore, Fuentes fails to show actual injury with respect to his claim that he was denied access to the courts by way of inadequate law library access, and this claim will be dismissed without prejudice accordingly.

D. Verbal Harassment Claim

Fuentes also alleges that defendant, Officer Almieda subjected him to verbal harassment. In particular, on April 22, 2005, Officer Almieda made a single remark to plaintiff in front of other inmates, saying, "Michael Jackson ain't got nothing on you."

16

"Intentional harassment of even the most hardened criminals cannot be tolerated by a civilized society." Hudson v. Palmer, 469 U.S. 517, 528 (1984). Generally, mere verbal harassment does not give rise to a constitutional violation. See McBride v. Deer, 240 F.3d 1287, 1291 (10th Cir. 2001)(taunts and threats are not an Eighth Amendment violation); Oltarzewski v. Ruggiero, 830 F.2d 136 (9th Cir. 1987); Rivera v. Goord, 119 F. Supp.2d 327, 342 (S.D.N.Y. 2000)(verbal harassment does not violate inmate's constitutional rights); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185 (D.N.J. 1993); Murray v. Woodburn, 809 F. Supp. 383 (E.D. Pa. 1993); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988). Racially discriminatory statements, racial slurs and epithets, without more, also do not establish liability under § 1983. See Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997)(verbal abuse directed at religious and ethnic background does not state a cognizable constitutional violation); Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985); Shabazz v. Cole, 69 F. Supp.2d 177, 200-01 (D. Mass. 1999) ("without even a suggestion of physical injury, [defendants'] verbal abuse and racial epithets, although continuing for a long period of time, fall short of conscience shocking conduct")[7]; Haussman v. Fergus,

_____

[7] The district court in Shabazz found that plaintiff's verbal harassment claim under the substantive component of the Fourteenth Amendment's guarantee of due process also fails. The Supreme Court has recognized two alternative theories by which a claim for denial of substantive due process is tested. The first

894 F. Supp. 142, 149 (S.D.N.Y. 1995); Prisoners' Legal
Association, 822 F. Supp. at 187-189 & n.3 (corrections officer's
use of racial slurs did not amount to constitutional violation);
Wright v. Santoro, 714 F. Supp. 665, 667 (S.D.N.Y. 1989), aff'd.,
891 F.2d 278 (2d Cir. 1989); Knop v. Johnson, 667 F. Supp. 467
(W.D. Mich. 1987), appeal dismissed, 841 F.2d 1126 (6th Cir.
1988).  Allegations that prison personnel have used threatening
language and gestures also are not cognizable claims under §
1983.  Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979) (defendant
laughed at prisoner and threatened to hang him).  However,
threatening language coupled with the threatening use of a weapon
and outrageous conduct by prison personnel may indicate a

---

theory involves "conscience shocking" behavior.  Shabazz, 69 F.
Supp.2d at 200.  The threshold for alleging a verbal harassment
claim under the conscience shocking behavior theory is very high.
Moreover, "[e]xtending the substantive component of due process
to prohibit verbal abuse between inmates and prison officials
would involve courts in the day to day operations of prisons,
[citation omitted], and weaken the deference due prison officials
in maintaining security."  Shabazz, 69 F. Supp.2d at 200.  Thus,
here, where plaintiff does not allege physical injury, the verbal
abuse and racial slurs fall far short of conscience shocking
behavior, especially where he alleges only a few and isolated
incidents.  See id.

     Under the second theory, plaintiff must demonstrate a
violation of an identified liberty or property interest protected
by the due process clause.  Fear or emotional injury alone
resulting from alleged verbal abuse will not be sufficient to
constitute a violation of an identified liberty interest.
Shabazz, 69 F. Supp.2d at 200.  Consequently, plaintiff's verbal
harassment claim, even if examined as a substantive due process
violation, fails to state a claim upon which relief may be
granted.

constitutional deprivation.  <u>Douglas</u>, 684 F. Supp. at 398 (the court determined that brandishing a butcher knife in close proximity to prisoner and threatening to kill him may amount to a constitutional violation); <u>see also</u> <u>Northington v. Jackson</u>, 973 F.2d 1518 (10th Cir. 1992) (gun was put to prisoner's head); <u>Burton v. Livingston</u>, 791 F.2d 97 (8th Cir. 1986)(guard threatened to shoot prisoner).

In this case, Fuentes alleges little more than a single incident of verbal harassment by CO Almieda.  There are no allegations of actual physical threats coupled with this one remark; nor does plaintiff claim that the harassing conduct occurred over a long period of time, or that physical injury from other inmates occurred as a result of the otherwise belligerent remark.  Therefore, this claim will be dismissed for failure to state a claim.

E.   <u>The 10% V.C.C.B. Tax and $50.00 User Fee Claim</u>

Fuentes next takes issue with the imposition of a 10% tax on all commissary purchases for purposes of funding the V.C.C.B.  He also states that the $50.00 user fee on inmate accounts and $2.30 fee charged for indigent kits are unlawful.

In <u>Myrie v. Commissioner, N.J. Dep't. Of Corrections</u>, 267 F.3d 251 (3d Cir. 2001), the Third Circuit held that <u>N.J.S.A.</u> 30:4-15.1, effective July 1998, which required all state inmates to pay a 10% surcharge on commissary purchases in order to fund

19

the V.C.C.B., was valid.  The court found that the surcharge was
not so punitive in purpose or effect to constitute "punishment"
in violation of the Double Jeopardy Clause, the Ex Post Facto
Clause or Bill of Attainder provision of the Constitution.  The
surcharge was not excessive and was rationally related to
legitimate governmental interest of "bridging the funding gap for
the crime victims compensation program," and did not offend
constitutional due process guarantees.  <u>Myrie</u>, 267 F.3d at 255-
263.

        This Court likewise finds that the nominal $50.00 fee on
inmate accounts and the $2.30 fee for an indigent kit are nominal
surcharges that are not intended as punishment, and do not
violate any due process rights of the plaintiff.  Therefore,
plaintiff's claim with respect to all of these surcharges will be
dismissed for failure to state a claim alleging violation of a
cognizable federal constitutional right.

F.  <u>Claim Against the Public Defender Defendants</u>

        Court-appointed counsel, public defenders, and investigators
employed by a public defender are absolutely immune from civil
liability under § 1983 when acting within the scope of their
professional duties.  <u>Black v. Bayer</u>, 672 F.2d 309, 317 (3d
Cir.), <u>cert. denied</u>, 459 U.S. 916 (1982).  Moreover, a public
defender "does not act under color of state law when performing a
lawyer's traditional functions as counsel to a defendant in a

criminal proceeding." Polk Co. v. Dodson, 454 U.S. 312, 325 (1981) (a public defender performing a lawyer's traditional functions as counsel to a defendant, such as determining trial strategy and whether to plead guilty, is not acting under color of state law); Steward v. Meeker, 459 F.2d 669 (3d Cir. 1972) (privately-retained counsel does not act under color of state law when representing client); Thomas v. Howard, 455 F.2d 228 (3d Cir. 1972) (court-appointed pool attorney does not act under color of state law).

Here, Fuentes has pleaded no facts to suggest that his appointed counsel has been performing in any capacity other than a traditional criminal defense attorney. However, even if Fuentes had pleaded facts that could establish that his public defender could be considered a state actor, and is claiming that his right to effective assistance of counsel is being violated, then he must raise this constitutional challenge in his pending state criminal case; a federal court generally will not intercede to consider issues that Fuentes has an opportunity to raise before the state court. Younger v. Harris, 401 U.S. 37 (1971).

Moreover, to the extent that Fuentes's criminal trial is no longer pending, and he has been convicted and sentenced, any claim of ineffective assistance of counsel[8] must first be

---

[8]  The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel in his defense." U.S. Const. amend. VI.

exhausted via state court remedies, *i.e.*, by direct appeal or other available state court review; and then, if appropriate, by filing a federal habeas application to assert any violations of federal constitutional or statutory law, namely, his claim of ineffective assistance of counsel.  Preiser v. Rodriguez, 411 U.S. 475 (1973).  There is nothing alleged in the Complaint to indicate that Fuentes has been convicted and sentenced, or that he has appealed his conviction or sentence to the New Jersey Appellate Division and exhausted his state court remedies.

Therefore, because the Public Defender's Office, in particular, attorney Szabo, was not acting under color of state law when representing Fuentes, and because Fuentes' claim of ineffective assistance of counsel must be asserted under a federal habeas petition after he has exhausted his state court

---

Without access to counsel, a criminal defendant cannot be guaranteed a fair trial.  "The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled."  Strickland v. Washington, 466 U.S. 668, 685 (1984) (citation omitted).  Due to the critical importance of a defendant's right to counsel, the United States Supreme Court has held that state courts must provide counsel for indigent defendants in criminal proceedings.  Gideon v. Wainwright, 372 U.S. 335, 344 (1963).

If a criminal defendant is not represented by counsel at trial or in critical pretrial proceedings and has not competently and intelligently waived his right to counsel, "the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty."  Johnson v. Zerbst, 304 U.S. 458, 468 (1938); see also United States v. Cronic, 466 U.S. 648, 654 (1984) (holding that if a defendant has no representation of any kind, his conviction is per se invalid).

remedies, the § 1983 claim against the Office of the Public Defender will be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

G.   Claims Against the Atlantic County Prosecutor's Office

"[A] state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit under § 1983.  Imbler v. Pachtman, 424 U.S. 409, 410 (1976).  See also Kulwicki v. Dawson, 969 F.2d 1454, 1465 (3d Cir. 1992); Schrob v. Catterson, 948 F.2d 1402, 1417 (3d Cir. 1991); Rose v. Bartle, 871 F.2d 331, 345 and n.12 (3d Cir. 1989).  A prosecutor's appearance in court as an advocate in support of an application for a search warrant and the presentation of evidence at such a hearing are protected by absolute immunity.  Burns v. Reed, 500 U.S. 478, 492 (1991). Similarly, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."  Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).

Prosecutors also are absolutely immune from a civil suit for damages under § 1983 for:  (1) instituting grand jury proceedings without proper investigation and without a good faith belief that any wrongdoing occurred, Schrob, 948 F.2d at 1411; Rose v.

Bartle, supra; (2) initiating a prosecution without a good faith belief that any wrongdoing has occurred, Kulwicki, 969 F.2d at 1463-64; (3) soliciting false testimony from witnesses in grand jury proceedings, probable cause hearings, and trials, Burns, 500 U.S. at 490; Kulwicki, 969 F.2d at 1467; and (4) the knowing use of perjured testimony in a judicial proceeding, Imbler, 424 U.S. at 424-27; Schrob, 948 F.2d at 1417; Brawer v. Horowitz, 535 F.2d 830 (3d Cir. 1976).

Thus, a prosecutor is absolutely immune when making a decision to prosecute, "even where he acts without a good faith belief that a wrongdoing has occurred." Kulwicki, 969 F.2d at 1463-64; Rose, 871 F.2d at 343. In this regard, a falsely-charged defendant may be "remedied by safeguards built into the judicial system," such as dismissal of the charges. Kulwicki, 969 F.2d at 1464.

Here, Fuentes makes no specific allegations against the Prosecutor's Office. Nevertheless, to the extent that the Complaint does make allegations as to the prosecution of Fuentes in a state criminal matter, it must be dismissed. It is plain that the Prosecutor was acting in his official prosecutorial role, and thus, is protected by immunity from a damages lawsuit for conduct during pre-trial and trial proceedings. Therefore, the Court will dismiss the Complaint in its entirety as against

defendant Atlantic County Prosecutor's Office, pursuant to 28
U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

Moreover, as stated above, to the extent that Fuentes is
challenging his conviction by seeking a new trial on a claim of
prosecutorial misconduct, the appropriate avenue of relief is
through direct appeal and exhaustion of his state court remedies,
and then, a federal habeas petition rather than a civil complaint
under 42 U.S.C. § 1983.  See Preiser v. Rodriquez, 411 U.S. 475
(1973).

## V.   CONCLUSION

For the reasons set forth above, the Complaint will be
dismissed with prejudice, in its entirety, as against the Public
Defender's Office and the Atlantic County Prosecutor's Office,
and Officer Almieda (on the verbal harassment claim) for failure
to state a claim and/or because the defendant(s) are immune from
liability, under 28 U.S.C. §§ 1915(e)(2)(B)(ii), (iii) and
1915A(b)(1),(2).  In addition, as to the remaining defendant, the
Atlantic County Office of Public Safety, plaintiff's claims
alleging interference with his mail, and inadequate access to the
law library will be dismissed without prejudice for failure to
state a claim.  Plaintiff's claim asserting that the V.C.C.B. tax
and user fee is unconstitutional will be dismissed with prejudice
for failure to state a claim.  Finally, plaintiff's claim
alleging that the conditions of his confinement at the ACJF

violate his Fourteenth Amendment rights will be allowed to
proceed at this time.  An appropriate order follows.


       s/Freda L. Wolfson
      FREDA L. WOLFSON
      United States District Judge

Dated: January 11, 2006